IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WESLEY PARKER | * |
| | * |
| v. | * Civil No. JKS 11-2170 |
| | * |
| CAROLYN W. COLVIN | * |
| Commissioner of Social Security | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff Wesley Parker brought this action pursuant to 42 U.S.C. § 405(g) for review of the Social Security Administration's (SSA) final decision denying his claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. §§ 401 *et. seq.* (the Act). Both parties' motions for summary judgment are ready for resolution, *see* ECF Nos. 12 and 14, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Parker's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

1. **Background.**

Parker filed an application for DIB on April 24, 2008, with an alleged disability onset date of September 30, 1999. R. 14, 48-50. His claim was denied initially on June 26, 2008, R. 51-53, and upon reconsideration on January 14, 2009. R. 58-59. Parker then filed a written request for a hearing before an Administrative Law Judge (ALJ), and the hearing was conducted on May 12, 2010. R. 20-47. The ALJ, William K. Underwood, issued a decision on July 7, 2010, finding that Parker was not disabled under the Act because he retained the residual functional capacity (RFC) to perform jobs available in significant numbers in the national economy. R. 12-19. The Appeals Council subsequently denied Parker's request for review on June 6, 2011, and the ALJ's decision became the final, reviewable decision of the agency. R. 1-5.

## 2. ALJ's Decision.

The ALJ evaluated Parker's disability claim using the five-step sequential process described in 20 C.F.R. § 404.1520. At step one, the ALJ found that Parker had not engaged in any substantial gainful activity since the alleged onset date of September 30, 1999 through his date last insured of December 31, 1999. R. 14. At step two, the ALJ found that Parker had the following severe medical impairments: degenerative joint disease of the knees, morbid obesity, and gout. R. 14. At step three, the ALJ found that Parker did not suffer from an impairment, or combination of impairments, listed in 20 C.F.R Part 404, Subpart P, Appendix 1. R. 14. At step four, the ALJ reviewed the record and determined that as of December 31, 1999, Parker possessed the RFC to perform repetitive, unskilled, sedentary work with some additional limitations,[1] R. 15, but was unable to perform any of his past relevant work. R. 18. At step five, given Parker's age, high school education, work experience, and RFC, the ALJ considered the testimony of the vocational expert (VE) and concluded that Parker was eligible for work that exists in significant numbers in the national economy. *Id.* Accordingly, the ALJ found that Parker was not disabled as defined under the Act and denied his application for benefits.

## 3. Standard of Review.

The role of this court on review is to determine if the ALJ applied the correct legal standards in finding Parker not disabled, and if substantial evidence supports that conclusion. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted). To be substantial, there must be more than a scintilla, but less than a preponderance, of

---

[1] These limitations include: an inability to climb ladders, ropes, and scaffolds; an inability to more than occasionally perform the other postural movements considered by the Social Security Administration; and an inability to surround himself with hazards including heights and moving machinery. R. 15.

2

the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). This court may not try the case *de novo*, and will affirm a decision if it is supported by substantial evidence. *Id.* If conflicting evidence could cause reasonable minds to differ on whether or not the claimant is disabled, it is the ALJ's right and responsibility to make that determination. *Craig v. Chater*, 76 F.3d, 589 (4th Cir. 1996) (citing *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)).

**4. Discussion.**

Before addressing Parker's arguments, the court notes that Parker's disability onset date is September 30, 1999 and his "date last insured" is December 31, 1999. Thus, Parker only had a three month window in which to show that he was disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005) ("To qualify for DIB, [the claimant] must prove that she became disabled prior to the expiration of her insured status.") (citing 42 U.S.C.A. § 423 (a)(1)(A), (c)(1)(B) and 20 C.F.R. §§ 404.101(a), 404.131(a)(2005)). In this case, there was very little evidence of Parker's condition prior to his date last insured. No records created prior to that date indicate that Parker is disabled.[2] On March 12, 1999, a treatment note from the Mirkin Medical Consultants indicated that Foster had gained weight (the ALJ noted that "[h]is weight was consistently over 400 pounds"), had high blood pressure, experienced urinary stinging, and suffered from gout. R. 16, 259. Likewise, on January 11, 2000, Dr. Robert M. Verklin noted that Parker experienced knee pain but concluded that Parker was not a candidate for arthroscopic surgery. R. 196. Dr. Verklin suggested that Parker "needs to lose a lot of weight and, in addition, consider nonoperative means such as . . . anti-inflammatory medications, steroid injections, or lubricant injections." R. 197. However, on May 10, 2010, over ten years later,

---

[2] The court recognizes that "medical evidence dating after [a] claimant's date last insured could be relevant to [a] claimant's disability status, but only if it reflected on claimant's ability to perform work prior to the date last insured." *Kelly v. Astrue*, No. 11-3104, 2012 U.S. Dist. LESIX 59204, at *3 n.3 (N.D. Ala. Apr. 27, 2012). "An injury that did not occur until *after* the date last insured could not possibly reflect on claimant's ability to do work *prior* to the date last insured." *Id*. (emphasis in original).

3

treating physician Dr. Christie stated that he had been treating Parker "on and off" since 1997 and that Parker had been disabled from employment since September 1999. R. 363. He also stated that Parker was disabled "probably also prior to 1999." R. 367.

Parker offers two primary arguments, namely, that: (a) the ALJ failed to properly evaluate the retrospective opinions of Dr. Christie and (b) the ALJ erroneously relied upon the testimony of the VE.

**A. The Opinions of Dr. Christie**

Parker first argues that the ALJ improperly evaluated whether Dr. Christie's opinions should be accorded controlling weight. ECF No. 12-1 at 5. A treating physician's testimony will be given controlling weight when the testimony is "'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Miller v. Callahan*, 964 F. Supp. 939, 950 (D. Md. 1997) (quoting *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996)). If the testimony is not well supported or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.* Here, the ALJ declined to accord controlling weight to Dr. Christie for three reasons. First, the ALJ noted that Dr. Christie's May 2008 opinion, which stated that Parker could never stand, walk, climb, bend, squat or crawl, directly conflicted with Dr. Marcalus's June 2008 function-by-function, detailed examination of Parker's postural capabilities. R. 310, 328. Specifically, Dr. Marcalus's examination noted: (1) no difficulties with sitting, standing, carrying or handling objects; (2) no need for an ambulatory aid; and (3) a score of 5/5 relating to his motor strength in his extremities. R. 310-11. Second, the ALJ pointed out that Dr. Christie had no medical records to support his opinion but instead relied solely on the fact that he was Parker's treating physician. R. 17. Third, the ALJ emphasized that the July 2008 x-ray of Parker's right wrist

4

(showing only a mild degree of degenerative change at the radial aspect of one his joints) was consistent with Dr. Marcalus's notation of 4/5 grip strength and the ability to make a fist, oppose fingers, and fully extend his hands. R. 308. Accordingly, the ALJ accorded less weight to Dr. Christie's assessment that Parker could never perform most posturals. This decision is supported by substantial evidence.[3]

Parker next contends that the ALJ erred in failing to address "in any manner" Dr. Christie's May 6, 2010 opinion, ECF No. 12-1 at 6, but this argument is unpersuasive for several reasons. First, it is incorrect. The ALJ referenced Dr. Christie's May 7, 2010, letter as well as Dr. Christie's May 6, 2010, form which indicated that Parker was capable of sedentary exertionals. R. 17. In any event, Parker fails to recognize that "an ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC." *Livingston v. Comm'r, Soc. Sec. Admin.*, CIV. SAG-10-2996, 2013 WL 674075, at *2 (D. Md. Feb. 22, 2013). "Instead, an ALJ is required to consider 'all of the relevant medical and other evidence.'" (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). Second, Parker fails to explain how a more thorough examination of the May 2010 report could have changed the ALJ's ultimate conclusion that Parker was not disabled under the Act. Dr. Christie himself wrote a letter accompanying the May 2010 report in which he stated that: (1) the May 2010 report was only a revised copy of the May 2008 report; and (2) the only difference in the reports was that "the prior one was an assessment of [Parker's] current medical condition and physical

---

[3] Parker contends that the ALJ failed to fully consider the factors outlined in 20 C.F.R. 404.1527(c) in affording Dr. Christie's opinions less weight, specifically, the examining relationship, the treatment relationship, the supportability of the opinion, the consistency of the opinion and the specialization of the opinion. Contrary to Parker's assertion, the ALJ touched on all of the applicable factors. The ALJ acknowledged that Dr. Christie examined Parker in person; he twice noted that Dr. Christie was Parker's treating physician, *see* R. 17; he noted that Dr. Christie had no medical records to support his opinion, *see id.*, and he noted that he gave less weight to Dr. Christie's opinion that Parker could never perform most posturals because this opinion was inconsistent with the objective evidence as a whole, especially Dr. Marcalus's examination. R. 17. The ALJ adequately considered the applicable factors listed in 20 C.F.R. 404.1527(c).

5

limitations" and the more recent report "firmly anchors those conditions in the earlier time period of September 1999." R. 363. Dr. Christie acknowledged that the medical records that support his opinion "are simply not available." R. 363. For all these reasons, the ALJ's decision to give reduced weight to Dr. Christie's 2010 opinion is supported by substantial evidence.[4]

Next, Parker argues that the ALJ erred in finding that he could perform sedentary work and alternate between sitting and standing for 30 minutes at a time. R. 15. When sedentary work is involved, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Powell v. Astrue*, No. SKG 10-2677, 2013 U.S. Dist. LEXIS 99568, at *23 (D. Md. July 17, 2013) (citing SSR 83-10, 1983 SSR LEXIS 30, at *13 (1983)). Parker points to Dr. Christie's notation that Parker could only sit for one hour during an 8-hour workday with normal breaks, and never stand, walk, climb, bend, squat or crawl. R. 328. This lone notation is not controlling for several reasons. First, as mentioned earlier, Dr. Christie's conclusion is not based on any objective evidence or laboratory findings. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"). Second, Parker cannot cite to any other evidence in the record that indicates that his sitting should be limited to only one hour per workday. Third, again, as discussed earlier, Dr. Christie's opinion is contradicted by Dr. Marcalus's contemporaneous assessment that Parker required no ambulatory aids and had no difficulty with sitting or standing.[5] R. 310. To be sure, it does appear that the ALJ

---

[4] Parker also contends that the ALJ failed to consider the medical opinions given after his date last insured, but the record is clear that the ALJ addressed the 2008 and 2010 evaluations of Dr. Christie, both of which occurred after the date last insured.

[5] Parker argues that the State Agency Physician, Dr. Rudin, rejected Dr. Marcalus's opinions in addressing Parker's (subsequently approved) application for Supplemental Security Income. ECF No. 12-1 at 10. The court finds to the contrary. Dr. Rudin concluded that Parker could sit with normal breaks for about 6 hours in an 8 hour workday and

misinterpreted Dr. Christie's conclusion that Parker could sit for a maximum of one hour *per workday* to mean that Parker could sit for a maximum of one hour *at a time*. R. 17. This error, however, is harmless. Dr. Rudin, when asked which conclusions were not supported by evidence in the file, specified as follows:

> There is a Form dated 5/6/08 completed by Chris Tie, MD that sets limits during an 8-hour work day that are overly restrictive and not consistent with the evidence, e.g., limits sitting and reaching each to 1 hr, and limits stand and walk each to "never".

R. 319. Dr. Rudin noted that this opinion was inconsistent with the conclusion that Parker has "[n]o difficulties with sitting, standing, hearing, speaking, carrying or handling objects." *Id.* Additionally, Parker's own testimony belies the contention that he cannot sit for longer than an hour per workday. At the hearing before the ALJ, the ALJ asked Parker why he thought that he could not perform a sedentary job. Parker answered that "it's very difficult for me to sit for long periods of time because my legs, they start swelling up . . . ." R. 32. Parker's statement that he cannot "sit for long periods of time" supports the notion that he could perform a sedentary job if given the option to alternate between sitting and standing for 30 minutes at a time, as the ALJ did in this case. In sum, any miscue by the ALJ would not change the fact that Dr. Christie's opinions were afforded little weight. Substantial evidence supports the ALJ's finding that Parker could perform sedentary work. R. 15.

### B. The Hypothetical Questions to the VE

Parker next contends that the ALJ erred by not asking the VE about whether Parker could (1) climb ladders, ropes, and scaffolds; (2) occasionally perform other postural movements; (3)

---

concluded that Parker had no difficulties with sitting or standing and no ambulating aid was needed. R. 315. Dr. Rudin also concluded that the alleged severity of Parker's limitations "is not fully consistent/credible with the medical evidence, e.g., [Parker] alleges use of crutches, cane, walker, motorized cart which are not supported by the medical evidence . . . ." R. 318. Dr. Rudin *did* conclude that Parker's situation could satisfy a *supplemental security income* claim, but for purposes of Parker's *disability* claim, Dr. Rudin noted that there was insufficient evidence to establish disability before his date last insured. R. 320.

encounter hazards, including heights and moving machinery; and (4) perform skilled work that is non-repetitive in nature. ECF No. 12-1 at 11. This argument fails to account for the ALJ's full line of inquiry to the VE, which if read in its entirety, shows that the ALJ incorporated these issues into his questions. *See Koonce v. Apfel,* No. 9801144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (noting that the ALJ is afforded "great latitude in posing hypothetical questions" and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations). The ALJ began with the following hypothetical:

> [L]et's look at an individual who from an exertional standpoint can do light work except that that would require no more standing or walking of about two hours in an eight hour day and from a postural ability to move around, this individual should never climb ladders, ropes or scaffolding but could occasionally do all the other postural movements that one considers and from an environmental standpoint one should avoid all exposure to hazards as those are considered by the Social Security Administration. And I think we'd be focusing on basically unskilled work, work that involves short simple instructions, that's repetitive and routine in nature.

R. 42. Based on this hypothetical, the VE stated that Parker could work as an assembler, a mail clerk or a packer. The ALJ then asked: "What if this individual instead of the work I just talked about of light work, was limited to sedentary work but they would need an ability to rotate between sitting and standing let's say every 30 minutes. Might there still be work available in either the regional or national economy?" R. 43. As framed by the ALJ, the limitations from the first hypothetical carried over into the second hypothetical. The only difference between the two hypotheticals was that the individual in the second hypothetical was limited to sedentary work with a sit/stand option every 30 minutes. Thus, Parker's assertion that the ALJ failed to include certain limitations in his hypothetical questions to the VE is contrary to the evidence in the record.

Finally, Parker contends that the ALJ fashioned an inaccurate hypothetical question to the

VE when he implied that Parker could stand for four hours in an 8 hour workday. ECF No. 12-1 at 11. While it is true that sedentary work generally requires an individual to sit for approximately six hours of an 8-hour workday (and thus stand or walk for no more than two hours of an 8-hour workday), the ALJ stated that Parker has the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) *except the claimant can sit or stand for 30 minutes at a time if . . . needed to alternate between those positions*." R. 15. It is true, as Parker asserts, that the hypothetical question "allowed for standing for four hours in an eight-hour workday," but this allowance merely gives the hypothetical worker the *option* to stand for four hours—it is not a requirement. Granting a sit/stand option every thirty minutes is not inconsistent with a finding that an individual can perform only sedentary work. The hypothetical presented to the VE is supported by substantial evidence and includes all the limitations deemed credible by the ALJ.

**5. Conclusion.**

Substantial evidence supports the ALJ's conclusion that Parker was not disabled under the Act. Parker's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

Date: August 27, 2013                                    /S/
                                             JILLYN K. SCHULZE
                                             United States Magistrate Judge